## NATIONAL LABOR RELATIONS BOARD v. WEST KENTUCKY COAL CO.

### No. 9936.

Circuit Court of Appeals, Sixth Circuit.

Dec. 6, 1945.

Owsley Vose, of Washington, D. C. (David A. Morse, and Malcolm F. Halliday, A. Norman Somers, and Owsley Vose, all of Washington, D. C., on the brief), for petitioner.

James G. Wheeler, of Paducah, Ky. (James G. Wheeler, of Paducah, Ky., and M. K. Gordon, of Maidsonville, Ky., on the brief), for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

The National Labor Relations Board filed a petition praying for enforcement of its order issued July 7, 1944, finding that the respondent had engaged in unfair labor practices within the meaning of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C., § 151 et seq., 29 U.S.C.A. § 151 et seq.

On November 5, 1943, the Board held a hearing for the purpose of investigation and certification of a bargaining representative for the employees of four of respondent's mines. Prior to the hearing the Secretary of the Interior, pursuant to an Executive Order of the President dated November 1, 1943, No. 9393, took possession of all bituminous coal mines, including the mines in controversy, and designated the respondent's president as operating manager for the Government. At the hearing on November 5, 1943, the respondent appeared specially, contending that the Board had no jurisdiction and that since respondent's mines had been taken over by the United States, respondent had no authority to participate in the proceedings. It moved that the petitions for investigation and certification be dismissed, or in the alternative, that the hearing be adjourned or continued until private operation of the mines should be resumed. The trial examiner suggested that the respondent might participate without prejudice to its challenge of jurisdiction, but the respondent refused to comply with this suggestion and left the hearing. The Government returned possession of the mines to the respondent November 17, 1943. On January 6, 1944, the Board denied respondent's motion to dismiss the petitions for investigation and certification, and approved the findings and conclusions of the trial examiner. It determined that respondent's production and maintenance employees working in North Diamond Mine No. 2, North Diamond Mine No. 3, and Hecla Mine, near Earlington, Kentucky, with certain exclusions not material here, constituted a unit appropriate for the purpose of collective bargaining with the respondent under § 9(b) of the National Labor Relations Act. An election was held among the employees in this unit. The Union secured a majority of the votes, and the Board thereupon certified the Union as the bargaining representative of the employees in the three mines. The Union later requested the respondent to meet with its representatives for the purpose of collective bargaining, and the respondent refused, claiming that the certification was invalid. A charge of unfair labor practices was filed, and the Board, after hearing, found that the respondent had refused to bargain collectively with the Union and had engaged in an unfair labor practice by issuing an improper pre-election statement to its employees. The usual order requiring the respondent to cease and desist from the alleged unfair labor practices, to bargain collectively with the Union, and to post appropriate notices, was entered.

If the certification of the bargaining unit as including North Diamond Mine No. 2, North Diamond Mine No. 3, and Hecla Mine, is valid, the refusal to bargain collectively is not denied.

Three principal questions are presented:

(1) Whether the Board had jurisdiction or authority to conduct a hearing for the purpose of determining what constituted an appropriate unit for collective bargaining after the Government had seized the mines and taken charge of all their properties and operations.

(2) Whether respondent, by its refusal to participate in the hearing of November 5, 1943, upon the question of what constituted an appropriate unit for collective bargaining, was estopped from introducing evidence bearing on that issue at a later hearing.

(3) Whether a statement from the respondent to its employees, stating respondent's position that all of its production and maintenance employees should be permitted to vote at one election, and that the election in which all production employees did not vote "might result in a minority imposing their will upon a majority of our employees," constituted an unfair labor practice.

■ As to the first point, the Board clearly was authorized to continue the representation proceeding after the mines were taken over by the Government. The certification and representation proceedings are preliminary and not adversary in their nature. Thus the certification is held not to be an order. United Employees Assn. v. National Labor Relations Board, 3 Cir., 96 F.2d 875, 876; American Federation of Labor v. National Labor Relations Board, 70 App.D.C. 62, 103 F.2d 933, 936. The obligation to bargain collectively exists only after the statutory bargaining representative requests the employer to bargain collectively. National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 293, 59 S.Ct. 501, 83 L.Ed. 660. The United States had no substantial interest in this purely preliminary nonadversary matter (Cf. Inland Empire District Council, etc., v. Millis, 65 S.Ct. 1316), and hence was not an indispensable party.

Moreover, the War Labor Disputes Act does not suspend the right to collective bargaining. This statute provides that the War Labor Board, in performing its functions, "shall conform to the provisions of * * * the National Labor Relations Act," 50 U.S.C. Appendix § 1507(a) (2), 50 U.S.C.A. Appendix § 1507(a) (2). The Executive Order authorizing the Secretary of the Interior to take possession of the coal mines provides that the Secretary of the Interior "shall recognize the right of the workers to continue their membership in any labor organization, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, provided that such concerted activities do not interfere with the operations of the mines."

The regulations governing the operation of the mines specifically provided (30 CFR Cum.Supp. § 603.24) that mining companies seized by the Government "are deemed to remain subject during the period of Government control to all Federal and State laws and to actions, orders, and proceedings of all Federal and State courts and administrative agencies."

■ We conclude that the Congress intended that the employees of plants seized by the Government under the War Labor Disputes Act should continue to enjoy the rights theretofore secured to them under the National Labor Relations Act, including that of collective bargaining, and that the orders and regulations issued in conformity to the statute carry out the same intention. The Board, therefore, was authorized to proceed with the representation case, regardless of the seizure of the mines.

Upon the point whether the respondent was estopped to introduce evidence as to the appropriate unit for collective bargaining by its refusal to participate in the original hearing, we think that the Board clearly must be sustained. In the hearing of April 17, 1944, which resulted in the decision and order here prayed to be enforced, the respondent desired to introduce certain evidence touching the unit problem. The attorney for the Board objected to such testimony, except that which was newly discovered or was not in respondent's possession at the time of the hearing in the original representation case. The evidence that the respondent endeavored to introduce was stated by its counsel to have reference to the time antedating the hearing of November 5. The trial examiner ruled that the matter of the appropriateness of the unit had already been litigated, and sustained the objection to this testimony.

No error was committed in the exclusion of this evidence. The fact that the respondent at the hearing of November 5, 1943, challenged the legality of the proceedings because of the seizure of the bituminous mines by the Government did not excuse respondent from its responsibility to introduce evidence on the material issues in the case. Cf. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 29, 57 S.Ct. 615, 620, 81 L.Ed. 893, 108 A.L.R. 1352. In that case the employer challenged the constitu-

tionality of the National Labor Relations Act and moved to dismiss the complaint for lack of jurisdiction. On denial of the motion the respondent withdrew from further participation in the hearing. The Supreme Court pointed out that "respondent did not take advantage of its opportunity to present evidence to refute that which was offered to show discrimination and coercion," and held that in this situation the record presented no ground for setting aside the order of the Board upon factual grounds.

■ When respondent finally offered its evidence as to the appropriate bargaining unit at the hearing of the unfair labor case in April, 1944, the Board, in due course, had already adjudicated that question. No adequate reason was advanced for the failure to adduce it at the hearing of November 5, 1943. New Idea, Inc., v. National Labor Relations Board, 7 Cir., 117 F.2d 517, 525; National Labor Relations Board v. Weirton Steel Co., 3 Cir., 135 F.2d 494, 497; National Labor Relations Board v. Aluminum Products Co., 7 Cir., 120 F.2d 567, 573. Cf. Colorado Radio Corp. v. Federal Communications Commission, 73 App.D.C. 225, 118 F.2d 24, 27. The respondent would not, by submitting evidence on November 5, 1943, have waived its right to have its jurisdictional objection later passed upon, and this fact was called to respondent's attention by the examiner. Cf. National Labor Relations Board v. Anwelt Shoe Mfg. Co., 1 Cir., 93 F.2d 367, 370; § 10 (e) of the National Labor Relations Act, 29 U.S.C., § 160(e), 29 U.S.C.A. § 160(e). Even if the respondent had been justified in not participating by the circumstance that the Government had taken possession of the mines, this condition existed only for two weeks. On November 17, 1943, the mines were returned to the owners. The order of decision and elections in the representation cases was filed January 6, 1944. The respondent therefore was in possession of its properties for some seven weeks between the hearing of November 5, 1943, and the decision of the Board. During that time it failed to apply to reopen the case or to be allowed to present the factual side of its contentions in any manner.

■ In addition, an opportunity was extended the respondent in the instant case at the hearing of April 17, 1944, to introduce any pertinent evidence arising after November 5, 1943, the date of the original representation hearing. Respondent claimed that the mines had been progressively mechanized and integrated and that therefore they should be treated as a unit for the purpose of bargaining. Counsel for the Board stated in effect that he would not object to such evidence arising after November 5, 1943, but while much of the evidence which respondent claims was improperly excluded arose after November 5, 1943, respondent did not offer it at the hearing from which this petition for enforcement is prosecuted. Respondent's chief engineer, for instance, stated that the evidence as to exchange of employees among the various mines covers the period after January 15, 1944, when Mine No. 2 was closed. But this evidence was offered for the first time upon the second representation hearing, that affecting the Poplar Ridge Mine.

The exclusion in April, 1944, of testimony not newly discovered which existed and might have been introduced at the hearing of November 5, 1943, was not error.

■■ Nor can respondent's motion to introduce as additional evidence the entire record in the representation case, in which a hearing was held August 11, 1944, be sustained. The introduction of additional evidence is authorized by § 10(e), 29 U.S.C., § 160(e), 29 U.S.C.A. § 160(e). Such evidence, in order to be received, must be material, and there must be a reasonable excuse for the failure to introduce it in the previous proceedings. Clearly this evidence is material, for it bears upon the organization and operation of the mines, the exchange of employees among the various mines, and contains other information which bears upon the propriety of union representation of individual mines, of groups of mines, or of all respondent's mines treated as one unit. However, the motion must be overruled because there were no reasonable grounds for the failure to adduce the evidence in the hearing before the Board. While the unit proceeding and the complaint of unfair labor practice growing out of it are really one, Pittsburgh Plate Glass Co. v. National Labor Relations Board, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251, the certification proceedings out of which this case arose are those which relate to North Diamond Mine No. 2, North Diamond Mine No. 3, Hecla Mine, and Mine No. 2. The certification proceedings which respondent wishes

202

to have considered in this case relate to the Poplar Ridge Mine, and were instituted after both hearing and decision in the instant unfair labor case.[1] The provision of § 10(e) that when the Board petitions for enforcement of its order it "shall certify and file in the court a transcript of the entire record in the proceeding" obviously refers to the record of previous proceedings and does not include subsequent proceedings, even though they arise between the same parties.

■ We think that the Board did not err in making its determination of unit representation. It grouped as one unit the three mines situated in Earlington, Kentucky, and treated as another unit the Poplar Ridge Mine situated in Sturgis, Kentucky, some 37 miles from the first group. It is shown that most of the employees in Earlington reside in that town, and the mines in the two counties have separate superintendents. The Union prayed for local representation at each mine, but the Board grouped the three mines in the same town in the same unit. We cannot say that this is an arbitrary ruling, unjustified by the record.

■ As to the question of the unfair labor practice which the Board determined grew out of the publication by the respondent of a pre-election statement, the decision of the Board cannot be sustained. The Supreme Court, in National Labor Relations Board v. Virginia Electric & Power Co., 314 U.S. 469, 477, 62 S.Ct. 344, 86 L.Ed. 348, recently upheld the right of the employer to express himself upon questions of unionization if his statement is not coercive. The Board did not include in the record the full statement published in the local papers by respondent prior to the election and held by the Board to violate the statute, upon the ground that respondent, by the statement, interfered with the conduct of a Board election and unlawfully attempted to influence the result of the election in such manner as to constitute interference with, restraint and coercion of its employees, in violation of § 7 of the Act. Nor does the statement appear in full in the examiner's intermediate report. This circumstance alone, that we have only partial quotations of the statement before us, would require us not to sustain the Board upon this feature of the case. Since the Board here seeks enforcement of its order, it has the burden of proof, and that proof is not sustained with reference to a charge of unfair labor practice growing out of an expression of opinion by an employer unless the entire statement is given. The respondent contends that the omitted part of the statement has material bearing upon the question of its fairness and legality. Moreover, we think that part of the statement quoted in the Board's finding is protected by the rule that free speech for both sides of a labor controversy is a constitutional right. The statement appealed to the employee's reason, not to his fear, and hence was protected by the First Amendment to the Constitution of the United States. National Labor Relations Board v. Brandeis & Sons, 8 Cir., 145 F.2d 556, 566; Midland Steel Products Co. v. National Labor Relations Board, 6 Cir., 113 F.2d 800; National Labor Relations Board v. Ford Motor Co., 6 Cir., 114 F.2d 905.

The order of the Board is modified by striking therefrom paragraph 5 of the conclusions of law. A decree will be entered enforcing the order, so modified.

[1] The various proceedings must be followed closely in order to understand the determinative issues. The hearing of November 5, 1943, related to the certification of the appropriate bargaining unit for the North Diamond Mines Nos. 2 and 3, and the Hecla Mine and Mine No. 2. The certification order issued in this case January 6, 1944. April 17, 1944, a hearing was held in a charge of unfair labor practice growing out of this certification. The decision and order in that case was announced July 7, 1944, and the order issued is the order which the Board prays herein to have enforced. A second representation case affecting the respondent's Poplar Ridge Mine was heard August 11, 1944. The decision and direction of election in this case was issued September 28, 1944. It is the record in the Poplar Ridge case, heard and decided subsequently to the case under review, which respondent asks us to consider here.