**ALLIS–CHALMERS MFG. CO. v. NATIONAL LABOR RELATIONS BOARD.**

**No. 9211.**

Circuit Court of Appeals, Seventh Circuit.

June 6, 1947.

Rehearing Denied June 24, 1947.

Charles B. Quarles, Wm. J. McGowan and John L. Waddleton, all of Milwaukee, Wis., and Philip X. Ley, of Pittsburgh, Pa. (McCloskey, Best & Leslie, of Pittsburgh, of counsel), for petitioner.

A. Norman Somers, Asst. Gen. Counsel, Gerhard P. Van Arkel, Ruth Weyand, Morris P. Glushien, Associate Gen. Counsel, and Henry W. Lehmann, all of Washington, D. C., for respondent.

Before KERNER and MINTON, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

This petition, in proceedings under § 10 of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., seeks the review of an order of the Board, predicated on findings of unfair labor practices committed in violation of § 8(1), (3), and (5) of the Act. The Board in its answer to the petition requests enforcement of its order.

The primary questions presented are (1) whether the inspectors were "employees" within the meaning of § 2(3) of the Act and could constitute a unit appropriate for the purpose of collective bargaining; (2) whether the inspectors were entitled to select as their bargaining representative any labor organization including one which represents the production and maintenance employees whose work they inspect; and (3) whether in any event the action taken with respect to the inspectors was a violation of § 8(3) and (5) of the Act.

Petitioner is a Delaware corporation having its principal office and place of business within this judicial circuit at Milwaukee, Wisconsin. It operates a plant at Pittsburgh, Pennsylvania, where it is engaged in the business of manufacturing and distributing electrical transformers and related products, and where the unfair practices occurred. On January 10, 1938, following a Board-directed election, under § 9 of the Act, the Board certified the United Electrical, Radio and Machine Workers of America, Local 613, C.I.O. (hereinafter referred to as union) as the collective bargaining representative for petitioner's production and maintenance employees. The Board's certification and the collective bargaining contract excluded the inspectors from the production and maintenance unit. Thereafter, for a period of seven years, petitioner and the union had an uninterrupted collective bargaining relationship evidenced by annual agreements containing provisions excluding the inspectors. On May 11, 1945, a hearing was held before a trial examiner designated by the Board, on a petition filed by the union requesting investigation and certification of it as the exclusive bargaining agent for the inspectors. The petition was opposed on the grounds that the inspectors were representatives of the management; that the functions of the inspectors conflict with the interests of the production employees, and for that reason the certification of the union would interfere with the proper performance of the inspection work; and that in any event, certification of the union as a collective bargaining agent for the inspectors would not effectuate the policies of the Act.

Petitioner's inspection department at the Pittsburgh plant consisted of a chief inspector, an assistant chief inspector, and 42 inspectors. These inspectors had no authority to hire or discharge employees or to recommend such action or other action affecting changes in the employment status of employees; they were charged with the duty of inspecting materials and workmanship for the purpose of insuring that petitioner's product met its specifications and those of its customers. They visually examined materials arriving at the plant and rejected those which did not conform to the specifications. They inspected the parts and products manufactured by petitioner at various stages of fabrication and when inspection disclosed an article which failed to conform to petitioner's standards, the inspectors rejected and "trouble tagged" the faulty article. If, however, the superintendent disagreed with the inspector concerning the rejection of an article, a committee composed of the superintendent challenging the rejection, the chief inspector, and a representative of the engineering department determined whether the inspector's rejection was justified. When the committee failed to agree, the representative of the engineering department made the final decision. They also checked the amount of work produced by the production employees for the purpose of insuring that the work was going through the department as it should and participated with the foremen, engineers, and superintendents in correcting design trouble when it arose. They also, on infrequent occasions, substituted for foremen who were absent from work; they were eligible for membership in the Foremen's Club, which was comprised of management representa-

tives for the purpose of discussing management problems; they were sometimes used as a source of instruction by production employees as to the proper method of performing work and were consulted with reference to adjustments in rates of pay of production employees with whose work they were familiar, but all employees whose work was examined by the inspectors were under the direct supervision of production foremen.

On July 31, 1945, the Board issued its decision in which it concluded that the inspectors were not supervisory employees, that their interests were not allied with those of management, and that the inspectors, excluding the chief and assistant chief inspector, constituted an appropriate collective bargaining unit, and directed that an election be held to determine whether the inspectors desired to be represented by the union. At an election thereafter held, the inspectors designated the union as their bargaining agent, and the Board, in accordance with the provisions of § 9(a) and (c) of the Act, certified the union as their exclusive bargaining representative.

On August 27, 1945, petitioner, without consulting the union, advised the inspectors that since they had chosen to be represented by the union, the functions which had been entrusted to them were removed, that their jobs would be reclassified, and that each inspector would be advised of his new classification and rate of pay. As a result of the reclassification, the inspectors were divested of certain of their duties, their responsibilities curtailed and their wages reduced. Each inspector was told to report thereafter to the foreman of the department to which he was assigned and to follow that foreman's instructions. As part of the change, a group of foremen was established who would have supervision over the inspectors, but the inspector still examined petitioner's products to determine whether they met the specifications and reported his findings to the foreman who decided whether the article should have been rejected.

On September 11, 1945, a conference was held between representatives of petitioner and the union at which the union, as a matter of collective bargaining, requested reinstatement of the inspectors to their former status and rates of pay. Petitioner's representative replied that the inspectors' jobs had been changed, that they were being properly paid for the work they were doing, and that the inspectors were now subject to the contract covering the production and maintenance employees. There were no other negotiations between petitioner and the union concerning the inspectors.

On September 18, 1945, the Board issued a complaint against petitioner, based on charges filed by the union, alleging, inter alia, that in reclassifying the inspectors without prior consultation or bargaining with the union and refusing to reinstate them to their former status and rates of pay, petitioner had committed unfair labor practices. Petitioner answered, denied it had violated the Act, and alleged that prior to reclassification the inspectors were "acting in the interest of an employer" and consequently were not "employees" under the provisions of the Act, and that, therefore, the Board had no jurisdiction or right to make a certification of representation for such employees.

After a hearing on the complaint, the trial examiner found that petitioner had violated the provisions of the Act, and recommended issuance of an order by the Board directing petitioner to cease and desist therefrom. After adopting the findings and conclusions of the trial examiner, the Board found that the inspectors were "employees" within the meaning of § 2(3) of the Act, and entered an order that petitioner cease and desist from its unfair labor practices, restore the inspectors to the status which they occupied prior to August 27, 1945, make them whole for any loss they may have suffered by reason of the petitioner's discriminatory change in their status, and bargain collectively with the union.

■ In its brief petitioner's first contention is that prior to their reclassification the inspectors were management representatives, not entitled to the benefit and protection of the Act, and could not constitute a unit appropriate for the purpose of collective bargaining. It frankly, however, called attention to the case of Packard.

Motor Car Co. v. National Labor Relations Board, 67 S.Ct. 789 then pending in the Supreme Court, and stated that in the event the Supreme Court should rule that supervisory employees are entitled to the benefit of the Act, its contention may be deemed superfluous. Since the Supreme Court, in that case, on March 10, 1947, held that foremen (supervisory employees) are employees within the meaning of § 2(3) of the Act and that they constitute an appropriate collective bargaining unit, we pass to a consideration of petitioner's second contention—whether the inspectors may select as their bargaining representative a labor organization which represents the production and maintenance employees.

Under § 9(b) of the Act, the Board has vast discretion in deciding the unit appropriate for the purposes of collective bargaining, and the Act "places upon the Board the responsibility of determining the appropriate group of employees for the bargaining unit." Pittsburgh Plate Glass Co. v. National Labor Relations Board, 313 U.S. 146, 152, 61 S.Ct. 908, 912, 85 L.Ed 1251. This function of the Board is a positive one, and must be performed in such fashion as to insure to employees the full benefit of their rights to self-organization and to collective bargaining, and otherwise to effectuate the policies of this Act. And when the Board has so determined, provided the Board exercised that discretion reasonably, its determination is binding upon us. May Department Stores v. National Labor Relations Board, 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145.

Petitioner contends that the Board's refusal to dismiss the petition in the representation proceedings constituted an unreasonable exercise of administrative discretion. It insists that the Board failed to give due consideration to the possible harmful effects of the affiliation of the inspectors with a rank and file union. It argues that the production and maintenance employees are concerned with the quantity of production, while the function of the inspectors is to control and maintain the quality of petitioner's products and to protect the interests of the buying public. To affiliate the inspectors with the union which represents the production and maintenance employees, says petitioner, will prevent the proper performance of their duties.

Section 1 of the Act declares it to be the "policy of the United States" to encourage "the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing." Thus it is clear that for the purposes of collective bargaining, it is for the employees in the unit found to be appropriate, and not for the Board, to determine what labor organization shall represent them. "Congress attached no conditions whatsoever to their freedom of choice in this respect. Their own best judgment, not that of someone else, was to be their guide." Hill v. Florida, 325 U.S. 538, 541, 65 S.Ct. 1373, 1374, 89 L.Ed. 1782. But in determining the appropriate unit the Board must give due consideration to all relevant factors and correlate the policies of the Act with whatever public or private interests may be in conflict. In determining the proper unit for inspectors and in deciding whether they should be permitted to choose the same union that represents production and maintenance employees, the Board must be guided not alone by the wishes of the inspectors. It must give due consideration to the duties and obligations of the inspectors and their possible relationships to the union representing other employees. National Labor Relations Board v. Jones & Laughlin Steel Corp., 67 S.Ct. 1274.

In our case the record does not establish any substantial conflict between the duties of the inspectors and the interests of the production employees which would give rise to a temptation on the part of the inspectors to pass defective work of the production employees, or that the inspectors' rejection of articles affects the earnings and employment status of the production employees responsible for the defective articles, nor does it show that the rejection results in the demotion or discharge of the responsible production employee.

The Board in its report pointed out that petitioner was free to take any disciplinary action necessary against inefficient or collusive inspectors, and after noting that "there is not a shred of evidence to show

that the inspectors have not faithfully performed or will not faithfully perform their duties despite the fact that they have chosen to join the same union which represents production employees," rejected petitioner's argument that to affiliate the inspectors with the union representing the production and maintenance employees would prevent the inspectors from the proper performance of their duties. Thus it is clear that the Board considered all relevant factors, including the duties and obligations ·of the inspectors and their possible relationships to the union representing the production employees.

In such a situation we would not be warranted to say that the Board unreasonably exercised its discretion; rather, we think that the case of National Labor Relations Board v. Jones & Laughlin, supra, is controlling here. In that case the court approved the grouping of the guards in a separate unit and permitted them to choose as their bargaining representative a union which also represented production and maintenance employees; hence, we must approve the grouping of the inspectors in a separate unit and permit them to exercise their own best judgment in the selection of a bargaining representative.

Petitioner next contends that its action in reclassifying the inspectors did not violate § 8(1), (3), and (5) of the Act.

It argues that in making the change it was not motivated by any ulterior motive or hostility to the union, and asserts that it reclassified the inspectors in order to "(a) retain control of inspection by methods essential to the requirements of customers, (b) minimize possibility of liability for damage, or loss of business, due to failure of equipment by having final inspection controlled by direct management representatives, and (c) protect the public interest."

We note that in the hearing before the Board petitioner conceded that it had demoted the inspectors and reduced their wages because at the Board-directed election, the inspectors had selected the union as their bargaining representative, and that it would not have made the changes had the inspectors not voted for the union.

In this state of the record it will be enough to say that whatever purpose an employer may have in demoting or otherwise adversely affecting the employment status of his employees who engage in lawful union activity, so long as that action would not have been taken in the absence of such union activity, the employer thereby necessarily discourages membership in the labor organization involved and thereby violates § 8(1). Moreover, an employer may not discriminate against an employee because of his membership or activity in a union even though the employer believes that he has good business reasons to justify his discrimination. Republic Aviation Corp. v. National Labor Relations Board, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed 1372, 157 A.L.R. 1081. Furthermore, petitioner demoted the inspectors and reduced their pay without consulting the union and thereafter, when requested by the union, refused to bargain collectively concerning. the change in the status of the inspectors. Section 9(a) of the Act provides that the subject matter of collective bargaining covers "rates of pay, wages, * * * or other conditions of employment" and § 8(5) "subject to the provisions of § 9(a)" makes it an unfair labor practice for an employer to refuse to bargain with the representatives of his employees. Wages which employees are paid and the duties which they perform are the very heart of an employment contract, whether such contract is established by individual bargaining or by the collective bargaining which it is the purpose of the Act to encourage, hence to take unilateral action with respect to wages after a union has been designated by its employees in an appropriate unit is a violation of the Act. May Department Stores v. National Labor Relations Board, supra.

Finally petitioner makes the point that it was denied a full and fair hearing. It appears that at the hearing in the unfair labor proceeding, it sought to introduce further testimony which would demonstrate that prior to reclassification the inspectors were management representatives, that certification of the union as the inspectors' bargaining agent necessitated re-

moval from them of certain management functions which they formerly performed, and that the situation was affected with a public interest. There was no claim that the testimony thus proposed to be introduced was newly discovered testimony not available or known to petitioner at the time of the representation hearing.

The trial examiner sustained objections to the testimony on the ground that the issues to which it was directed had already been litigated in the unit case. Under these circumstances and on the record before us, we see no error in the exclusion of this testimony. See Pittsburgh Plate Glass Co. v. National Labor Relations Board, supra, 313 U.S. 161, 162, 61 S.Ct. 908, 85 L.Ed. 1251, and National Labor Relations Board v. West Kentucky Coal Co., 6 Cir., 152 F.2d 198, 201.

The petition to set aside the Board's order will be denied, and the request for its enforcement will be granted.