NATIONAL LABOR RELATIONS BOARD
v. WORCESTER WOOLEN MILLS
CORPORATION.

No. 4346.

United States Court of Appeals
First Circuit.

Oct. 4, 1948.

Louis Libbin, of Washington, D. C. (David P. Findling, Ruth Weyand, and Rose Mary Filipowicz, all of Washington, D. C., on the brief), for petitioner.

Howard W. Cowee, of Worcester, Mass. (Simon G. Friedman, of Worcester, Mass., on the brief), for respondent.

Before MAGRUDER, Chief Judge, and GOODRICH and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is a petition by the National Labor Relations Board for enforcement of an order in the usual form directing the Worcester Woolen Mills Corporation of Cherry Valley, Massachusetts, to bargain collectively with Textile Workers Union of America, C.I.O., as the exclusive representative of all production and maintenance employees in its plant, excluding office and clerical employees, executives, foremen and all other supervisory employees, with respect to wages, rates of pay, hours and other conditions of employment. All jurisdictional facts have been stipulated, and it has also been stipulated that the Union is a labor organization within the meaning of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. In addition it appears to be conceded that the employee unit described above is an appropriate one for the purposes of collective bargaining.

The Respondent was incorporated under the laws of Massachusetts on January 1, 1946, to carry on a business which had been conducted for some ten years as an individual enterprise by one Myer G. Jasper who became the president and treasurer of the corporation. On February 27, 1946, most of the Respondent's production employees struck for recognition of the Union as their bargaining representative, and on March 4, the Union filed with the Board a petition for investigation and certification of representatives under § 9(c) of the Act, seeking exclusive representation of all employees of the Respondent, except clerical and supervisory employees. On March 6 the strike was settled, the striking employees returning to work on March 11 under an agreement entered into by the Union, a federal conciliator and the Respondent, whereby the latter agreed to the conciliator's "recommendation that the strike be terminated and all striking employees be reinstated without discrimination to the job and shift on which they were employed at the time the strike began." Jasper testified that in addition it was then understood that at the time of the strike the Respondent had extra employees in its finishing room, and that since there might be no need for all of them, such employees would be rehired only as need for their services might arise.

On March 15, the Board's regional director ordered a pre-hearing election for March 22, and so advised the Respondent. The eligibility rules issued for this election provided that the voting unit should consist of "all employees of the Company who appeared on the pay roll as of March 12, 1946," the day after the termination of the strike, except executive, office and supervisory employees, and that employees in the voting unit who did not work during the designated pay roll period because they were ill, on vacation, or temporarily laid off, and those in the armed forces of the United States who might present themselves at the polls in person, would be eligible to vote, but that employees who had quit, or been discharged for cause since the pay roll period and had not been rehired or reinstated before the date of the election, would not be eligible to vote.

The Respondent was seasonably informed of its right to designate an observer at this election, but neglected to do so, and on the day of the election the agent of the Board in charge designated the Respondent's bookkeeper, who had herself prepared the list of eligible voters, as observer for the Respondent during the balloting. The election was held according to notice and

the Respondent's bookkeeper and a representative of the Union were present throughout the balloting and the counting and tabulation of the ballots afterward. Jasper himself was present before the balloting began, and again during the counting and tabulating of ballots, but does not appear to have voiced any objection to anyone with respect to the designation of the Respondent's bookkeeper as its observer. Following the counting of the ballots, Jasper and the Union representative signed a "Tally of Ballots" in which the agent of the regional director of the Board certified that in the election 63 of 67 eligible voters had cast ballots, and that of these 30 were for the Union, 19 were against it, and 14 were challenged. At the bottom of the Tally over the signatures of Jasper and the Union's representative appeared the printed statement that the "undersigned acted as authorized observers in the counting and tabulating of ballots" and "that the counting and tabulating were fairly and accurately done, that the secrecy of the ballots was maintained, and that the results were as indicated above."

A hearing before a trial examiner of the Board was held in the representation proceedings on April 30, 1946, at which representatives of the Respondent and the Union appeared and participated and all interested parties were afforded full opportunity to be heard. At the hearing before the Board on the record made in those proceedings the Respondent objected to the conduct of the election on three grounds: (1) That the Board agent selected the Respondent's observer without consulting it and failed properly to instruct her; (2) that certain illegal actions on the part of the Union in obtaining authorization cards before the election so influenced the employees that they were deprived of a free choice in the election; and (3) that because of the inadequacy of the instructions given to its observer, five named persons were allowed to cast unchallenged ballots in the election although they were ineligible to vote.

The Board considered each of these grounds carefully. It found no prejudicial irregularity in the designation of the Respondent's observer for the reason that she was the logical person to act in that capacity since she had prepared the list of eligible voters, and for the further reason that although the Respondent was fully informed of its right to appoint its own observer, it had not only failed to do so, but had permitted her to serve without objection and without making any effort to appoint anyone else. And it found, in spite of her evidence to the contrary, that the Board agent in charge of the election had given her adequate instructions with respect to her duties, basing this finding on testimony of the Union's observer that both he and the Respondent's bookkeeper were fully instructed by the Board's agent at the same time and in each other's presence as to their duties as observers in general, and their rights in particular to challenge the ballots of employees they considered ineligible. Furthermore it found confirmation for this conclusion in the fact that during the election the Respondent's observer had actually challenged the ballots of seven persons.

The Board next ruled that the trial examiner had properly excluded the Respondent's proffered evidence that the Union by engaging in an unlawful strike and by other illegal activities had so coerced employees into signing authorization cards that they were unable to vote freely in the subsequent election. It said: "Assuming that the Company had proved such activity on the Union's part, this would not have warranted the conclusion that the employees were deprived of a free choice in the election. For, as stated by the Trial Examiner on the record, the employees were protected in their right freely to select bargaining representative by means of an election by secret ballot, which occurred after the alleged misconduct, and they were not bound by their authorization cards when they voted."

On the Respondent's third contention the Board ruled that since the Respondent had not exercised its power to challenge it could not be heard to object to the election on the ground that ineligible employees had voted therein. But it went on to hold that the five named individuals were eligible anyway, since they were all former employees who, although not reinstated on the

eligibility date because there was no work for them at that time, had been reinstated before the date of the election.

Then the Board went on to consider the challenged ballots. It found that both the Union and the Respondent had each with-drawn one challenge, leaving 12 remain-ing, six by the Union and six by the Re-spondent. It overruled all the Union's challenges, and sustained three and over-ruled two of the Respondent's reserving consideration of the Respondent's remain-ing challenge until a supplemental tally of ballots should disclose whether or not this ballot could possibly affect the outcome of the election. The supplemental tally in-dicating that of 67 eligible voters, 59 cast valid ballots of which 32 were for the Union and 27 were against it, the Board did not consider this challenged ballot, but on July 25, 1946, certified the Union as the bargaining representative of the Respond-ent's production employees. Nevertheless the Respondent still refused to bargain collectively with the Union, although re-quested to do so during the month of Au-gust, 1946, and in consequence the instant unfair labor practice proceeding was in-stituted by the Union to compel it to do so.

The Respondent freely concedes that it has consistently refused to bargain with the Union as the representative of its pro-duction employees. Before the trial ex-aminer and the Board in the present pro-ceeding it took the position that its refusal was justified on three grounds: (1) that the Board election in which the Union was chosen as the bargaining representative of its production employees was invalid because ineligible persons had been per-mitted to vote therein; (2) that the Union had lost its majority after the election and before it had either been certified by the Board or made its request to bargain col-lectively, and (3) that circulation by the Union of two circulars alleged to contain derogatory statements about the Respond-ent's president and treasurer relieved it of any obligation to recognize the Union for collective bargaining purposes.

■ The trial examiner in the instant proceeding excluded the evidence offered by the Respondent to show that the Board election of March 22, 1946, was invalid because ineligible persons had been per-mitted to vote in it. He took this position for the reason that evidence of the same general character, although less detailed, had been adduced by the Respondent in the prior representation proceeding, wherein the same contention had been advanced, litigated and decided adversely to the Re-spondent, and for the additional reason that the Respondent did not contend that its evidence was unknown to it at the time of the representation proceeding or that its witnesses were then unavailable. The Board affirmed this ruling on the same line of reasoning, and we think this was clearly within the Board's discretionary powers.

■ Certification or unit proceedings under § 9(c) of the Act are not made sub-ject to direct review by the Courts of Ap-peal under § 10(f) of the Act (American Federation of Labor v. National Labor Relations Board, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347), but the record in such proceedings is part of the record in unfair labor practice proceedings based on a re-fusal to bargain collectively with a labor organization which has been certified, with the result that "The unit proceeding and this complaint on unfair labor practices are really one." Pittsburgh Plate Glass Co. v. National Labor Relations Board, 313 U.S. 146, 158, 61 S.Ct. 908, 915, 85 L.Ed. 1251. But an issue covered and decided in unit proceedings cannot as of right be re-litigated in a subsequent unfair labor prac-tice proceeding. If such an issue is to be relitigated in an unfair labor practice pro-ceeding once it has been canvassed in a cer-tification proceeding it is up to the party desiring to do so to indicate in some affirm-ative way that the evidence offered is more than cumulative. Otherwise a single trial of the issue of enough, and it is within the Board's discretionary power to refuse to reconsider the issue. Id., 313 U.S. at pages 161 and 162, 61 S.Ct. at pages 916, 917, 85 L.Ed. 1251.

■ Therefore the evidence on the issue of the validity of the election proffered by the Respondent in the instant proceeding is not before us. Its evidence on that issue offered and considered by the Board in

the preceding certification proceeding, however, is before us, and that evidence amply substantiates the Board's conclusion that the election was valid and accurately reflected the wishes of the Respondent's production employees at the time.

There can be no doubt, indeed it is admitted by the Respondent, that its principal officer was seasonably informed of his right to appoint an observer for the Respondent at the election but failed to do so and acquiesced at the time in the appointment of the Respondent's bookkeeper to that post by the Board's agent in charge of the election. Moreover there can be no doubt that the bookkeeper was the logical person to act for the Respondent in that capacity since she was a non-supervisory employee who because of her familiarity with the Respondent's employees had been entrusted by it with the preparation of the list of eligible voters. Nor can there be any question that the evidence fully supports the Board's findings that she was adequately instructed by the Board's agent in charge of the election with respect to her duties as an observer for the Respondent, and her right to challenge the votes of employees she considered ineligible. The testimony of the Union's observer adverted to above and the fact that she actually challenged the votes of seven employees clearly warrants this conclusion of the Board.

█ The Respondent having been given ample opportunity to challenge at the election, we see no reason why the policy of the Board against post-election challenges sanctioned by the Supreme Court in National Labor Relations Board v. A. J. Tower Co., 329 U.S. 324, 67 S.Ct. 324, 91 L.Ed. 322, should not be given full effect in the case at bar. Hence we need not consider the Respondent's contention that ineligible persons were permitted to cast unchallenged votes in the election.

The Respondent does not press its other contentions very vigorously, nor would it avail it anything if it did.

It attempts to support its contention that the Union lost its majority before it was certified and before it made any request to bargain as the representative of the Respondent's production employees by offering evidence that twelve of its employees who had voted in the election had left the Respondent's employment on various dates between March and September 1946, and that eight of these had actively participated in the strike of February of that year; its position apparently being that these eight, because of their activity in the strike in February presumably cast ballots in March for the Union so that the termination of their employment must have deprived the Union of its majority. The proffered evidence is weak because as the Board pointed out there is nothing to show that the remaining four employees who left their jobs did not vote against the Union, or that formerly anti-union employees who stayed on their jobs had not changed their attitude. Nor is there anything to show that the Respondent had not replaced the twelve employees who left with new employees who were favorable to the Union.

█ But it would make no difference if the Respondent's evidence were more cogent, for, as the Supreme Court pointed out in Franks Bros. Co. v. National Labor Relations Board, 321 U.S. 702, 705, 64 S. Ct. 817, 819, 88 L.Ed. 1020, "a bargaining relationship once rightfully established must be permitted to exist and function for a reasonable period in which it can be given a fair chance to succeed", and we certainly cannot say that more than a reasonable test period elapsed between the date of the election and the date in August, 1946, when the Respondent refused the Union's request to bargain.

█ The Respondent has cited no authorities in support of its final proposition that distribution of circulars derogatory to its president and treasurer ought to have been admitted in evidence for the reason that they provided "a reasonable cause for Respondent to maintain a negative position in the matter of fair bargaining." We have examined the circulars and can say with the Board that we are not persuaded that they constitute any defense. One of them, as the Board found, is obviously only an appeal for members and was apparently issued about a week after certification and before the Respondent's refusal

to bargain. The other, issued three weeks after the refusal to bargain, does contain a severe criticism of the Respondent's president and treasurer for refusing to recognize the Union, but in spite of this we cannot say that the criticism is so severe as to invalidate the Board's finding that it neither motivated nor constituted a valid excuse for the Respondent's failure to bargain with the Union as the duly certified representative of its employees.

A decree will be entered enforcing the order of the Board.