NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

AIR CONTROL PRODUCTS OF ST. PE-
TERSBURG, INC., Respondent.

No. 21017.

United States Court of Appeals
Fifth Circuit.
July 28, 1964.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Dominick L. Manoli, Associate Gen. Counsel, Lawrence Gold, Atty., Arnold Ordman, Gen. Counsel, Stephen B. Goldberg, Paula Omansky, Attys., N.L.R.B., Washington, D. C., for petitioner.

Harrison C. Thompson, Jr., Shackleford, Farrior, Stallings, Glos & Evans, Tampa, Fla., for respondent.

Before TUTTLE, Chief Judge, BROWN, Circuit Judge, and BREWSTER, District Judge.

JOHN R. BROWN, Circuit Judge.

This is another § 8(a) (5), 29 U.S.C.A. § 158(a) (5), case in which the Employer defends by asserting defects in the § 9, 29 U.S.C.A. § 159, representation proceedings which resulted in the certification of the Union as the exclusive collective bargaining representative of Employer's workers.[1] In its § 8(a) (5) attack on the certification, the Employer makes two primary contentions. First, it asserts that the Regional Director and the Board incorrectly denied a hearing on its objections to the manner in which the election was conducted, and second, it urges that the Trial Examiner in the § 8 (a) (5) case erroneously refused to hear proffered evidence bearing on the intrinsic merits of both the objections and the pre-election unit determination. Wrapped up in all this is the further contention that the Hearing Officer improperly denied a request for continuance of the § 9 representation hearing.

I.

The contention that the Hearing Officer improperly denied a continuance of the § 9 hearing is plainly lacking in merit. The Employer does not dispute the controlling legal principle that matters of continuance rest in the sound discretion of the hearing officer or examiner and his decision should ordinarily not be interfered with by a reviewing court except upon a clear showing of abuse of discretion. Jefferson Elec. Co. v. NLRB, 7 Cir., 1939, 102 F.2d 949, 955; NLRB v. Algoma Plywood & V. Co., 7 Cir., 1941, 121 F.2d 602, 604; NLRB v. American Potash & Chemical Corp., 9 Cir., 1938, 98 F.2d 488, 491–492.[2] Rather, the Employer asserts that this record demonstrates a "clear showing of abuse." We do not agree.

1. The § 8(a) (5) cases of this sort are legion. E.g., NLRB v. Dallas City Packing Co., 5 Cir., 1958, 251 F.2d 663; Cone Bros. Contracting Co. v. NLRB, 5 Cir., 1956, 235 F.2d 37; NLRB v. Dallas Concrete Co., 5 Cir., 1954, 212 F.2d 98; Phillips Petroleum Co. v. NLRB, 5 Cir., 1953, 206 F.2d 26; NLRB v. Sidran, 5 Cir., 1950, 181 F.2d 671; NLRB v. Quincy Steel Casting Co., 1 Cir., 1952, 200 F.2d 293; NLRB v. Worcester Woolen Mills Corp., 1 Cir., 1948, 170 F.2d 13; Elm City Broadcasting Corp. v. NLRB, 2 Cir., 1955, 228 F.2d 483; NLRB v. American Steel Buck Corp., 2 Cir., 1955, 227 F.2d 927; NLRB v. A. Sartorius & Co., 2 Cir., 1944, 140 F.2d 203; NLRB v. Medo Photo Supply Corp., 2 Cir., 1943, 135 F.2d 279, aff'd, 1944, 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007; NLRB v. Wilkening Mfg. Co., 3 Cir., 1953, 207 F.2d 98; NLRB v. Southern Bleachery & Print Works, Inc., 4 Cir., 1958, 257 F.2d 235; Ohio Power Co. v. NLRB, 6 Cir., 1949, 176 F.2d 385, 11 A.L.R.2d 243, cert. denied, 1949, 338 U.S. 899, 70 S.Ct. 249, 94 L.Ed. 553; NLRB v. West Kentucky Coal Co., 6 Cir., 1945, 152 F.2d 198; Semi-Steel Casting Co. v. NLRB, 8 Cir., 1947, 160 F.2d 388, cert. denied, 1947, 332 U.S. 758, 68 S.Ct. 57, 92 L.Ed. 344; NLRB v. Deutsch Co., 9 Cir., 1959, 265 F.2d 473, cert. denied, 1960, 361 U.S. 963, 80 S.Ct. 592, 4 L.Ed.2d 544, rehearing denied, 362 U.S. 945, 80 S.Ct. 804, 4 L. Ed.2d 773; NLRB v. Moss Amber Mfg. Co., 9 Cir., 1959, 264 F.2d 107.

2. Cf. Franklin v. South Carolina, 1910, 218 U.S. 161, 168–169, 30 S.Ct. 640, 54 L.Ed. 980; Goldsby v. United States, 1895, 160 U.S. 70, 72, 16 S.Ct. 216, 40 L.Ed. 343.

The RC[3] case was initiated on February 14, 1961, by the Union's[4] petition for a representation election among the Employer's employees.[5] On February 27, 1961, the Board's Regional Office served Employer with a notice stating that a hearing would be held on the petition on March 8, 1961. On March 1, the hearing was rescheduled for March 9, and on March 2 the Regional Office received a letter from Attorney Marks, a member of the firm then representing Employer, requesting postponement of the hearing on the ground that he would be engaged in a trial in the Florida state court on that date. By telephone conversation on that same day, the hearing officer agreed to postpone the hearing if Marks notified him by the close of business on March 7 that he would still be in trial on March 9.[6] At 4:30 p. m. on March 8, Marks' secretary called the Regional Office to ask for a continuance. The hearing officer informed her that the request had come too late and that the hearing would be held on March 9 as scheduled. Further requests by telephone and telegram the morning of the hearing were also denied.

These facts reveal no abuse of discretion. On the contrary, they demonstrate a considered effort on the part of the hearing officer to balance the interest of the Employer and the public in a "full and complete record"[7] against the interest of the parties and the public in proceeding with the RC case with "the utmost dispatch."[8] Attorney Marks knew from the telephone conversation on March 2, that the hearing officer desired to hold the hearing on March 9 if Marks was not in court. The workable, practical solution adopted was for Marks to call on March 7. He not only failed to do that, he failed to call until 4:30 p. m. on March 8. At that stage, it was certainly within the discretion of the hearing officer to do as he did—deny the continuance.

## II.

The objections[9] to the election on which the Employer contends the Director and the Board should have granted a hearing relate to the conduct of an employee named Johnson. Asserting that Johnson was a supervisor within the meaning of the Act,[10] the Employer charged that the election should be set

3. For convenience, we adopt the abbreviation used by the Board in its annual reports. An RC case is a petition by a labor organization or employees for certification of a representative for purposes of collective bargaining under § 9(c) (1) (A) (i) of the Act. 28 NLRB ANN. REP. 161 (1963).

4. Teamsters, Chauffeurs, Helpers, Local Union No. 79, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America.

5. On the same date the Union filed a similar petition with respect to employees of Air Control Products of Tampa, Inc., another wholly-owned subsidiary of Air Control Products, Inc. Although the two petitions were consolidated for purposes of Board proceedings, the Union was defeated in the Tampa plant election. This case, accordingly, involves only the St. Petersburg employees.

6. Marks also agreed to make arrangements for Union inspection of certain Employer records which had been subpoenaed in connection with the hearing.

7. NLRB Rules and Regulations § 102.64 (a), 29 CFR § 102.64(a).

8. NLRB v. American Potash & Chemical Corp., 9 Cir., 1938, 98 F.2d 488, 492.

9. The objections procedure is detailed in § 102.69 of the Board's Rules and Regulations, 29 C.F.R. § 102.69. This section among other things provides:
 "Within 5 days after the tally of ballots has been finished, any party may file with the regional director four copies of objections to the conduct of the election or conduct affecting the results of the election, which shall contain a short statement of the reasons therefor.
 "* * *
 "(c) * * *
 "[A]ction by the regional director [on objections] may be on the basis of an administrative investigation or, if it appears to the regional director that substantial and material factual issues exist which can be resolved only after a hearing, on the basis of a hearing before a hearing officer, designated by the regional director."

10. 29 U.S.C.A. § 152(11).

aside because Johnson had improperly assisted the Union in obtaining their showing of interest required by the Board prior to the direction of an election,[11] interfered with the free choice of the employees in the election by speaking in favor of the Union, and engaged generally in coercion of employees.[12] The Regional Director, after the administrative investigation provided by the Rules and Regulations,[13] declined to grant a hearing and overruled the objections. The reasons for the denial of a hearing and the overruling of the objections were couched in these terms. First, the Director reasoned, the facts adduced in his investigation of the objections failed to sustain the allegation that Johnson was a supervisor. Thus Johnson's actions, if done as alleged, were those of a rank-and-file employee and consequently did not in law constitute a ground for setting aside the election. Second, assuming Johnson was a supervisor, the Director concluded that his activities in connection with the obtaining of the Union's showing of interest would not constitute a basis for setting the election aside since such conduct antedates the Board's Decision and Direction of Election. Third, as to the post-Decision and Direction conduct, granting that Johnson said what the Employer said he said, namely that if the Union got in the employees would have to join, the Director concluded that this in law did not amount to improper coercion. Fourth, the Director assigned a broad justification covering all the conduct. That was that assuming Johnson was a supervisor and that he did all that the Employer alleged he did, as a matter of

law this would not justify setting aside the election since the Employer knew all the time, and particularly before the election, Johnson's status and what he was up to.

■ Of course it is clear that § 8(a)(5) orders which rest on crucial factual determinations made after *ex parte* investigations and without hearing cannot stand.[14] But we need not determine the validity of any of these reasons which brought in question factually Johnson's status, because in the final analysis the Director assumed Johnson was a supervisor and that he said what the Employer said he said. Having assumed this, the Director concluded that as a matter of law no ground was presented which would justify setting aside the election. If as a matter of law, this determination was correct, a hearing was properly denied, for the case law is clear that the Director is not required to grant a hearing on objections when the presentation of the objecting party demonstrates that if all the evidence were credited no ground is shown which would warrant setting aside the election.[15]

■ Although not articulated in this fashion in our previous decisions, the rationale of this rule is a simple one. If there is nothing to hear, then a hearing is a senseless and useless formality. As the Court said in Fay v. Douds, 2 Cir., 1949, 172 F.2d 720, 725, "[t]he Constitution protects procedural regularity, not as an end in itself, but as a means of defending substantive interests."

Taken most favorably to the Employer, the objections were directed at (a) John-

11. NLRB STATEMENTS OF PROCEDURE §§ 101.17, 101.18(a) (4), 29 C.F.R. §§ 101.17, 101.18(a) (4).

12. The objection charged that the Union had engaged in coercion, but the only conduct alleged in this connection was that of Johnson. The Union coercion charge thus stands or falls on what Johnson did.

13. 29 C.F.R. § 102.69(c), see note 9, supra.

14. NLRB v. Sidran, 5 Cir., 1950, 181 F. 2d 671; NLRB v. West Tex. Util. Co., 5 Cir., 1954, 214 F.2d 732; NLRB v. Dallas City Packing Co., 5 Cir., 1956, 230 F.2d 708.
 This apparently is the rule in other Circuits. E.g., NLRB v. Joclin Mfg. Co., 2 Cir., 1963, 314 F.2d 627, citing Sidran.

15. NLRB v. O.K. Van Storage, Inc., 5 Cir., 1961, 297 F.2d 74, 75; NLRB v. Vulcan Furn. Mfg. Corp., 5 Cir., 1954, 214 F.2d 369, 372; Fay v. Douds, 2 Cir., 1949, 172 F.2d 720.

son's aid in the Union's obtaining the requisite showing of interest and (b) his interference with the free choice of the employees.

■ As to the first—the invalidity of the Union's showing of the employees' interest [16] in securing certification because of Johnson's improper assistance—the law is clear that the showing of interest has only a limited purpose. "It was devised as a means of facilitating the Board's decision as to whether the circumstances justify holding an election at all." [17] Consequently the decisions of this and other Courts are uniform to the effect that the validity of the showing of interest is for administrative determination and may not be litigated by the parties, either Employer or Union. [18]

■ As to the second—the assertion that Johnson's activities in favor of the Union amounted to unlawful interference with the free choice of the employees—there is a very short answer. Whether such activity is a ground for setting aside an election if conducted behind the Employer's back, the Board has held where the Employer is aware of such conduct and takes no steps to dissipate its effects, he may not rely on it as a basis for setting aside the election. [19] As did the Fourth Circuit recently, we approve as good sense the Board's statement of the reflex of this rule—that is, that advocacy of the Union by supervisory personnel, "*unknown* to the employer, is cause for annulment of the election." (Emphasis supplied.) [20] Unless the distinction is made between supervisory advocacy

which the Employer knows of and that which goes on behind his back, we would, in the former situation be allowing the Employer to take advantage of wrongdoing for which he has an operational responsibility. This was the rationale of the Underwood Machinery decision of the Board. [21]

■ Since the Employer's moving papers showed by their contents and the times at which they were presented that it knew of Johnson's status and conduct, his activities would not justify setting aside the election; and a hearing on the objections was not required. [22]

## III.

■ This brings us to the Employer's contention that the Trial Examiner in the § 8(a) (5) hearing should have allowed it to introduce evidence bearing on both the objections relating to Johnson's conduct and the issues relating to the unit determination. What we hold in Part II in relation to Johnson's activities quickly disposes of the contention insofar as that objection is concerned. The thrust of the controlling decisions in O. K. Van Storage, Vulcan Furniture, and Fay v. Douds, [23] is that if the facts would not amount in law to a justification for setting the election aside, no hearing is required at any stage.

■ The refusal of the Trial Examiner to allow the Employer to introduce evidence bearing on the unit determination presents a different problem, and its resolution is based upon different considerations.

16. See note 11, supra.

17. NLRB v. Swift & Co., 3 Cir., 1961, 294 F.2d 285, 288.

18. NLRB v. White Constr. & Eng. Co., 5 Cir., 1953, 204 F.2d 950, 953; NLRB v. Swift & Co., 3 Cir., 1961, 294 F.2d 285, 288; Kearney & Trecker Corp. v. NLRB, 7 Cir., 1953, 209 F.2d 782, 787–788; NLRB v. J. I. Case Co., 9 Cir., 1953, 201 F.2d 597, 600; NLRB v. National Truck Rental Co., 1956, 99 U.S. App.D.C. 259, 239 F.2d 422, 425, cert. denied, 1957, 352 U.S. 1016, 77 S.Ct. 561, 1 L.Ed.2d 547.

19. Underwood Mach. Co., 80 NLRB 1264, 1265; Hadley Mfg. Corp., 106 NLRB 620, 621–22; Talladega Cotton Factory, Inc., 91 NLRB 470, 471–72; see E. I. Dupont de Nemours & Co., 81 NLRB 238; Goodyear Tire & Rubber Co., 85 NLRB 135; Greater New York Broadcasting Co., 85 NLRB 414.

20. NLRB v. Lord Baltimore Press, Inc., 4 Cir., 1962, 300 F.2d 671. 673.

21. 80 NLRB 1264.

22. Authorities cited note 15, supra.

23. Cited note 15, supra.

From the time the Union's petition initiating the RC case was filed on February 14, 1961, the question of whether certain installers were employees or independent contracts was an issue in the case. At the hearing provided by the regulations,[24] the Union introduced sworn testimony bearing upon the duties of the installers. These witnesses were not cross examined, nor was evidence introduced by the Employer although its representatives were present at the hearing and given a chance to testify and bring forward all available evidence. That they did not was wholly a matter of their deliberative choice after full advice.[25] The Board determined that the installers were employees and directed that they be included in the unit.[26] At the § 8(a) (5) unfair labor practice hearing, the Employer attempted to introduce evidence bearing on the unit determination issue. The Trial Examiner refused to admit the evidence because counsel for Employer candidly admitted that it was neither newly discovered nor otherwise unavailable at the time the § 9(e) (1) pre-election, representation hearing was conducted on March 9, 1961.

The narrow question presented on these facts is whether as a general proposition this rule of exclusion is a permissible one.

In this discussion we would emphasize that we are dealing only with a situation growing out of a pre-election unit determination. We are not dealing with objections to the manner in which the election (or election campaign) is conducted or those in which election activities constitute unfair labor practices.

■ The law seems well established that it is not error for the Trial Examiner in the § 8(a) (5) unfair labor practice hearing of the sort here involved to exclude evidence relating to the unit determination if that evidence is not newly discovered or was not otherwise unavailable at the time of the § 9(c) (1) representation hearing. Pittsburgh Plate Glass Co. v. NLRB, 1941, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251; NLRB v. West Kentucky Coal Co., 6 Cir., 1945, 152 F.2d 198; NLRB v. Moss Amber Mfg. Co., 1959, 264 F.2d 107.[27] In NLRB v. Kentucky Coal Co., 6 Cir., 1945, 152 F.2d 198, the Court likewise held that it made no difference that the evidence was not in fact made a part of the prior record where the party offers no reasonable excuse for failing to introduce it.

■ We have carefully distinguished the kind of problem here presented because the representation proceeding is a unique thing. Non-adversary in the usual sense, the § 9(c) (1) hearing is directed toward determining whether an election should be directed and the appropriate unit in which to hold the election. 29 C.F.R. §§ 102.63, 102.67. In recognition of their unique character, Congress has removed representation hearings from the requirements of § 5 of the Administrative Procedure Act, 5 U.S. C.A. § 1004. Consequently, the hearing may be conducted by a hearing officer who

24. 29 C.F.R. § 102.63–.66.

25. Apparently the Employer's counsel at that time was desirous of bolstering the contest of the denial of a continuance. Whatever the motive, the record reveals that members of Employer's management refused to testify on "advice of counsel."

26. At the time the representation proceeding was held in this case, the initial decision whether to direct an election and, if so, the composition of the unit was made by the Board. Since that time, the Board, pursuant to Congressional authorization, 29 U.S.C.A. § 153(b), has delegated the responsibility for initial decision to the Regional Directors, retaining discretionary review jurisdiction and the power to make the initial decision in cases presenting novel or difficult questions. NLRB News Release of April 28, 1961; 26 Fed.Reg. 3885, 3911; 29 C.F.R. §§ 102.66(h)–(j), 101.21.

27. Cf. Manning, Maxwell & Moore, Inc. v. NLRB, 5 Cir., 1963, 324 F.2d 857; NLRB v. Southern Airways Co., 5 Cir., 1961, 290 F.2d 519; NLRB v. Worcester Woolen Mills Corp., 1 Cir., 1948, 170 F. 2d 13; NLRB v. Southern Bleachery & Print Works, 4 Cir., 1958, 257 F.2d 235; NLRB v. Parkhurst Mfg. Co., 8 Cir., 1963, 317 F.2d 513.

may be "an officer or employee of the regional office," 29 U.S.C.A. § 159(c), 29 C.F.R. § 102.64(a), and whose duties transcend those of a normal adjudicatory official. Not confined to ruling on motions and objections, 29 C.F.R. § 102.65 (a), (b), and questions of continuances and evidence, the hearing officer has the duty to "inquire fully into all matters in issue," 29 C.F.R. § 102.64(a), in other words—to make a record. The hearing officer makes no findings of fact, conclusions of law or recommendations, but may submit an analysis of the record to the Regional Director, 29 C.F.R. § 102.66(f), who then decides, upon the record made in the hearing, whether an election should be directed and, if so, in what unit. 29 C.F.R. § 102.67. Thereafter, the parties may invoke the Board's discretionary review jurisdiction. 29 C.F.R. § 102.67 (b)-(g). Determinations made in the course of representation proceedings are normally not directly reviewable, either in the Courts of Appeals or the District Courts. American Federation of Labor v. NLRB, 1940, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347; Boire v. Greyhound Corp., 1964, 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849; cf. Leedom v. Kyne, 1958, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210.

 All of this has been done deliberately by Congress out of a regard for the necessity of some real dispatch. Consequently, although this Circuit has not had occasion to pass on the precise question, we think the rule announced is sound. As the Board argues here in its brief, allowing the Employer to hold back evidence bearing on the unit issue forces the Board to make its initial unit determination on a less than complete record. This increases the risk that the Board's determination will be in error and that consequently another election will be required. But waste of administrative and judicial effort is not the only consideration. The Act is designed to facilitate industrial peace through encouragement of collective bargaining. Interminable

delay in the selection of the bargaining representative does not contribute to that end. This record, as would most others from the Board, demonstrates why the question of *time* is a critical factor in adapting procedures to the policy of the Act. With no criticism of the Employer intended, its exercise of the lawful right to take the bold course of a § 8(a) (5) route to test the election has resulted in a delay of almost three years since the Union won the election,[28] and over two years since the Board's final decision certifying the Union as the exclusive agent for purposes of collective bargaining.[29] Yet the Union has never been recognized as the representative of the employees and the Employer has never bargained with it. We would not approve of an approach which might repeat the whole process because of an erroneous unit determination brought about by the failure of the parties to produce all evidence relevant to the unit issue.

## IV.

 Section 2(3) of the Act, 29 U.S.C.A. § 152(3), provides that the term "employee" shall not include "any individual having the status of an independent contractor." The evidence adduced in the representation hearing and now incorporated in the § 8(a) (5) record 29 U.S.C.A. § 159(d), is quite ample when judged by the accepted standards, NLRB v. Nu-Car Carriers, Inc., 3 Cir., 1951, 189 F.2d 756; NLRB v. Steinberg & Co., 5 Cir., 1950, 182 F.2d 850, 855; NLRB v. Keystone Floors, Inc., 3 Cir., 1962, 306 F.2d 560; NLRB v. Phoenix Mut. Life Ins., Co., 7 Cir., 1948, 167 F.2d 983, 6 A.L.R.2d 408; National Van Lines, Inc. v. NLRB, 7 Cir., 1960, 273 F.2d 402; Local No. 24, Intern. Broth., etc. v. NL RB, 1959, 105 U.S.App.D.C. 271, 266 F.2d 675; Creel v. Lone Star Defense Corp., 5 Cir., 1949, 171 F.2d 964, to support the conclusion of "employee," not "independent contractor." The Board's determination being supported by substantial evidence, it must be upheld, 29 U.S.C.A. §

28. The election was held on August 10, 1961.

29. March 14, 1962.

160(e), (f), Universal Camera Corp. v. NLRB, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. We are not free to make the choice de novo. NLRB v. Herman Sausage, Co., 5 Cir., 1960, 275 F.2d 229, 231.

No procedural defect vitiates the certification, and the unit determination is supported by substantial evidence.

Enforced.