NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

MOSS AMBER MFG. CO., Respondent.

No. 15952.

United States Court of Appeals
Ninth Circuit.

Feb. 27, 1959.

Jerome D. Fenton, General Counsel, Thomas J. McDermott, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Washington, D. C., George A. O'Brien, Attorney, N.L.R.B., Los Angeles, Cal., for petitioner.

Frank A. Mouritsen, Los Angeles, Cal., for respondent.

Before FEE, CHAMBERS and JERT-BERG, Circuit Judges.

JERTBERG, Circuit Judge.

This case is before this Court upon a petition of the National Labor Relations Board, pursuant to Section 10(e) of the National Labor Relations Act, as amended (61 Stat. 136, 29 U.S.C.A. § 151 et seq.,)[1] for enforcement of its order charging the respondent with unfair labor practice. The order issued December 12, 1957 ordered the respondent to "Cease and Desist From: Refusing to bargain collectively with the Los Angeles Joint Board, Amalgamated Clothing

1. The relevant statutory provisions appear in the appendix to this decision.

Workers of America, AFL-CIO, as the exclusive representative of all spreaders and cutters employed by the Respondent at its San Fernando, California, plant, excluding all other production employees, shipping and office employees, maintenance employees, bundle girls, the pattern-maker-cutter, and all other supervisors as defined in the Act."

This Court has jurisdiction as the unfair labor practice occurred at respondent's plant in San Fernando, California, where respondent manufactures men's sport shirts for shipment in interstate commerce.

Respondent is engaged at San Fernando and at Los Angeles in the production of sport shirts. The two plants are 25 miles apart. The Los Angeles plant houses the company's principal office and showroom, and books and payroll records are kept there. In addition, the primary designing of the garments is done in the Los Angeles plant, which is also used for the production of samples. After the designing is completed, the production of the garments is shifted to San Fernando, where the spreading, cutting, and sewing operations are performed. The finished goods are then returned to the Los Angeles plant, where they are pressed, folded, boxed, and shipped. Among the employees at the Los Angeles plant are two cutters in the design department, who cut samples, and also cut "trim" (such as collars) which is then shipped to San Fernando to be incorporated in the finished garment. All other cutting and spreading operations are performed at San Fernando. The company president, Henry Amber, is in charge at Los Angeles, where he does the designing for the company. The vice-president, Edward Moss, is in general charge at San Fernando, and spends 50 hours a week there, but also supervises the cutters at Los Angeles. The Los Angeles plant has approximately 25 employees, and the San Fernando plant has approximately 100 employees.

There appears to be no dispute between the parties as to the following statement of the case:

A. Representation Proceeding

On September 5, 1956, the union filed a petition with the Board seeking certification as the bargaining representative of the cutters employed at respondent's San Fernando plant. Although the petition was limited to cutters, the facts developed at the hearing showed that the work originally done by cutters alone was then divided into work done by "cutters" and work done by "spreaders". At the hearing respondent took the position that the appropriate unit should also include the two cutters employed at its Los Angeles plant, and the bundle girls and patternmaker at the San Fernando plant.

The decision of the Board, after reviewing the evidence taken at the hearing, states:

"Upon the entire record herein, and particularly in view of the geographical separation of the 2 plants, their different functions, the lack of employee interchange and bargaining history, and the fact that no labor organization currently seeks to represent employees at both plants, we find that a unit of employees limited to the San Fernando plant is appropriate.

"It is clear from the record that the cutter and spreaders at the San Fernando plant are skilled employees, and that their jobs are, to some extent, complementary.[5] The Board has found that spreaders and cutters in the garment industry, such as those involved herein constitute a homogeneous group of skilled employees, with interests separate and apart from other employees.[6] We therefore find that the

"5. Until about September, each of these employees did both spreading and cutting.

"6. Little Champ Manufacturers, Inc., 104 NLRB 985 at 990; Rothschild-Kaufman Co., Inc., 98 NLRB 353.

spreader and cutters at the San Fernando plant constitute an appropriate bargaining unit. * * *

"Upon the entire record in this case, we find that the following employees of the Employer at its plant at San Fernando, California, constitute an appropriate unit within the meaning of Section 9(b) of the Act: All spreaders and cutters, excluding all other production employees, shipping and office employees, maintenance employees, bundle girls, the patternmaker-cutter, and all other supervisors as defined in the Act."

Following the decision of the Board, the respondent moved the Board for reconsideration of its decision. The basis of the motion was that the unit found as appropriate by the Board was inappropriate because the cutters and spreaders in both plants constituted a single homogeneous unit and that a division of such employees, who have a community of interests and whose work largely complements one another, was arbitrary and capricious. In such motion respondent stated:

"The Employer accepts the Board's ruling with respect to excluding the bundling girls who work in the cutting department, as well as the exclusion of the patternmaker-cutter at the San Fernando location who, the Board rules, is a supervisory employee.

"The Employer moves to amend the Direction of an Election to include in one homogeneous group of skilled employees all spreaders and cutters employed by the Employer at its San Fernando and Los Angeles locations, and agrees that if that is done the unit then so designated will in fact constitute an appropriate unit within the meaning of Section 9(b) of the Act."

The affidavit of Edward Moss, filed in support of the motion, stated that the union had been attempting to organize the employees engaged in the cutting department at the Los Angeles plant prior to the institution of the proceeding and prior to the Board's decision.

The motion for reconsideration was denied. In accordance with the Board's decision, an election was held among the employees of the unit found appropriate, and a majority voted for the union. The Board accordingly certified the union as the bargaining representative of these employees.

### B. The Unfair Labor Practice Proceeding

██ Respondent refused to bargain with the union upon the latter's request, on the ground that the bargaining unit determined by the Board was not appropriate. The union filed a charge with the Board, a complaint issued, and the case went to hearing before a trial examiner. At the hearing respondent sought to introduce evidence that the Board had erred in determining that a unit confined to the San Fernando cutters and spreaders was appropriate.

The evidence sought to be offered falls into two categories. One category related to evidence showing that the Board erred in referring to the two plants as performing "different functions", and erred in referring "to the lack of employee interchange" since one of the Los Angeles cutters had occasionally done some interchanging. The other category related to "newly discovered" evidence. In this category, counsel for respondent offered in evidence several exhibits, and offered to prove that the union was actively attempting to organize respondent's employees at both plants before and after the hearing in the representation case and after the issuance of the complaint in the unfair labor practice case. Respondent stated to the hearing officer that the offered evidence was "newly discovered" and that such evidence was not available or known to the respondent at the time of the hearing in the representation proceeding. The trial examiner declined to permit respondent to introduce the proffered testimony and exhibits. The trial examiner found that respondent's refusal to

bargain with the union certified by the Board violated Section 8(a) (1) and (5) of the Act.

Respondent filed exceptions to the report of the trial examiner and to the ruling of the trial examiner excluding the proferred evidence hereinbefore mentioned. In the decision and order of the Board it is stated:

"The Board has reviewed the rulings of the Trial Examiner made at the hearing and finds that no prejudicial error was committed.[1] The rulings are hereby affirmed. The Board has considered the Intermediate Report, the exceptions and brief, and the entire record in this case, and hereby adopts the findings, conclusions, and recommendations of the Trial Examiner."

Upon the entire record in the case, the Board ordered the respondent to cease and desist from refusing to bargain with the union, to bargain with the union upon its request, and to post appropriate notices.

On this appeal respondent does not urge as error the exclusion by the trial examiner of the evidence offered in the first category above mentioned, this for the reason, undoubtedly, that such evidence was not "newly discovered", was readily available at the representation hearing, and cumulative to evidence already in the record. Under such circumstances, the Board was not required to relitigate those matters in the unfair labor practice proceeding.[2]

The sole contention of the respondent on this appeal is that the bargaining unit determined by the Board was not appropriate because the Board did not consider as a factor the extent of organization of employees of respondent at the San Fernando plant, and that the "newly discovered" evidence offered by respondent was improperly excluded, and that such evidence, if received, would have established the unit certified by the Board was inappropriate under Section 9(c) (5) of the Act.

■ Under Section 9(b) of the Act, the Board was delegated the authority to determine the appropriate bargaining unit. Under Section 9(c) (5) of the Act the Board must decide in each case whether the unit appropriate for collective bargaining purposes shall be the employer unit, craft unit, plant unit, or subdivision thereof. The law is well settled that the Board's determination of the appropriateness of a bargaining unit will not be upset by the courts unless such determination is arbitrary or capricious. Pittsburgh Plate Glass Co. v. N.L.R.B., supra; May Department Stores Co. v. N.L.R.B., 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145; Foreman & Clark, Inc. v. N.L.R.B., 9 Cir., 215 F.2d 396, certiorari denied 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697.

"1. On the ground that the Respondent could not relitigate in this proceeding issues which had been decided in the prior representation proceeding, 116 NLRB 1998, the Trial Examiner at the hearing herein excluded, inter alia, certain evidence which the Respondent asserts was newly discovered and therefore admissible. The Respondent further asserts that such evidence, pertaining to alleged efforts by the Union to organize employees in addition to those included in the appropriate unit, would establish that such unit was inappropriate under Section 9(c) (5) of the Act because it was based on the Union's extent of organization. Section 9(c) (5), however, precludes the Board only from giving controlling weight to extent of organization, and the findings made in the representation case show that the Board's unit determination in that case was affirmatively supported by clear and decisive evidence wholly unrelated to extent of organization. In these circumstances, the allegedly newly discovered evidence, even if admitted, would not affect the validity of the Board's unit determination in the representation proceeding or our agreement therewith. See The Employers Liability Assurance Corporation, Ltd., 117 NLRB 92; Kwikset Locks, Inc., 116 NLRB 1648. Accordingly, the Trial Examiner's ruling, even if assumed to be erroneous, was not prejudicial."

2. Pittsburgh Plate Glass Co. v. N.L.R.B., 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251;

In the instant case the Board determined that a unit composed of the cutters and spreaders at the San Fernando plant was appropriate. Respondent conceded in its motion for reconsideration of the Board's decision that the exclusion of the bundling girls and the patternmaker-cutter at the San Fernando plant was acceptable, and conceded that if the spreaders and cutters at the Los Angeles plant were included that such group would constitute a homogeneous group of skilled employees and an appropriate bargaining unit. On oral argument, this Court endeavored to elicit from counsel for respondent the present views of the respondent as to an appropriate unit among its employees. Counsel's only reply was that such determination was "up to the Board".

A unit composed of all of the employees at the San Fernando plant would exclude the cutters and spreaders at the Los Angeles plant who, according to the respondent, in conjunction with the cutters and spreaders at the San Fernando plant constitute a homogeneous group of skilled workers. A unit composed of all employees at both plants would include groups of skilled and unskilled workers, receiving different rates of pay, whose working conditions differ, and wherein there is no community of interest between groups. In determining the appropriate unit, the Board considered the geographical separation of the two plants, the lack of employee interchange and bargaining history. The Board was made aware of the activities of the union to organize the cutters at the Los Angeles plant. The decision of the Board reflects that it considered the "newly discovered" evidence even though it did not formally rule on the ruling of the trial examiner excluding such evidence. This Court agrees with the decision of the Board that the unit determination made by the Board was supported by substantial evidence separate and apart from the extent of organization of employees by the union. This Court is satisfied that the Board, in determining the appropriate unit, was not controlled by the extent of organization among the employees of respondent, and therefore did not ignore or act contrary to the provisions of Section 9(c) (5).

Contentions similar to those made by the respondent in this case were made in Foreman & Clark, Inc. v. N.L.R.B., supra, and Harris Langenberg Hat Co. v. N.L.R.B., 8 Cir., 216 F.2d 146. In both cases the Board's determination of the appropriate unit was upheld.

On the record in this case, we are unable to say that the determination made by the Board was arbitrary or capricious, or that respondent has been denied due process.

The petition for enforcement of the order of the Board is granted.

## APPENDIX

Title 29 U.S.C.A. § 158. "Unfair labor practices

"(a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

\*　　\*　　\*　　\*　　\*　　\*

"(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title."

"§ 159. Representatives and elections—

"(a) Exclusive representatives; employees' adjustment of grievances directly with employer

"Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the

intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: *Provided further,* That the bargaining representative has been given opportunity to be present at such adjustment.

"Determination of bargaining unit by Board

"(b) The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof * * *

"Hearings on questions affecting commerce; rules and regulations

"(c) (1) Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the Board—* * *

"(B) * * * the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto. If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof.

* * * * * *

"(5) In determining whether a unit is appropriate for the purposes specified in subsection (b) of this section the extent to which the employees have organized shall not be controlling.

"Petition for enforcement or review; transcript

"(d) Whenever an order of the Board made pursuant to section 160(c) of this title is based in whole or in part upon facts certified following an investigation pursuant to subsection (c) of this section and there is a petition for the enforce-

ment or review of such order, such certification and the record of such investigation shall be included in the transcript of the entire record required to be filed under subsection (e) or (f) of section 160 of this title, and thereupon the decree of the court enforcing modifying, or setting aside in whole or in part the order of the Board shall be made and entered upon the pleadings, testimony, and proceedings set forth in such transcript."