NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

CONVAIR POMONA—a Division of Convair, a Division of General Dynamics, Respondent.

No. 16967.

United States Court of Appeals Ninth Circuit.

Feb. 8, 1961.

Stuart Rothman, Gen. Counsel, Diminick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Frederick U. Reel, Warren M. Davison, Attys., N.L.R.B., Washington D. C., for petitioner.

Robert B. Watts, Jr., San Diego, Cal., Robert B. Watts, San Diego, Cal., of counsel, for respondent.

Before JERTBERG and KOELSCH, Circuit Judges, and YANKWICH, District Judge.

JERTBERG, Circuit Judge.

This case is before this Court upon petition of the National Labor Relations Board, pursuant to Section 10(e) of the National Labor Relations Act, as amended, 61 Stat. 136, as amended by 73 Stat. 519, 29 U.S.C.A. § 151 et seq., for enforcement of its order charging the respondent with unfair labor practice. The order issued March 25, 1960 ordered the respondent to:

"1. Cease and desist from:

"(a) Refusing to bargain collectively with Associated Tool and Die Makers of America, as the exclusive representative, with respect to rates of pay, wages, hours of employment and other conditions of employment, of all employees in the tool manufacturing department (Department 42) at the Respondent's Pomona, California, missile plant, excluding all other employees and supervisors as defined in the Act.

"(b) * * *

"2 * * *"

This Court has jurisdiction as the unfair labor practice [refusal to bargain with the union certified by the Board] occurred at respondent's plant at Pomona, California, pursuant to Section 10(e) of the Act.

Respondent, a Delaware corporation, is engaged in the manufacture, development, design and sale of military and commercial aircraft (including guided missiles), aircraft parts and accessories, in San Diego, California, Pomona, California, and various other locations throughout the United States. Respondent at its Pomona, California, plant is engaged in the manufacture of guided missiles for the armed forces of the United States.

In order to present in proper focus the problem presented by the petition for review it is necessary to give a brief summary of the facts and a brief statement of the representation proceedings.

The tool manufacturing department (Department 42) is located in a section of Building 2 of respondent's Pomona plant. This department is not physically segregated by partitions, walls or screens. These employees are separated only by aisles from other employees working in Building 2. This department is supervised by a general foreman who reports directly to the chief of manufacturing engineering. There are approximately 140 employees assigned to Department 42. They are classified as machinists, grinders, tool and die makers, welders, sweepers, a saw operator, and an expe-

diter. Tools for use in the production of missiles, such as dies, jigs, fixtures, gauges, and form blocks, are made in Department 42. In other words, the function of this department is to design and manufacture tools and dies necessary for the production phase of respondent's operations.

Located in another area of respondent's plant is Department 31, the experimental factory. There are 400 employees working in Department 31; 90 are machinists, grinders, and tool and die makers, and constitute a separate tooling section within Department 31. The employees in this section are engaged in production and prototype work and in various other types of experimental work. Department 31 is not under the general supervision of the chief of manufacturing engineering.

On March 17, 1958, the union filed a petition seeking certification as the bargaining representative of the employees in the tool and die department at respondent's Pomona plant, including tool inspectors, but excluding all other employees. The union admits to membership tool-and-die makers and allied classifications of employees. At the time the petition was filed, all employees at the plant, with certain exceptions not here relevant, but including the employees sought by the union, were represented by the International Association of Machinists, District 120, Guided Missile Lodge 1254, AFL-CIO.

At the hearing the union sought to represent alternatively to the unit requested in its petition all tool-and-die makers, tool room machinists, and grinders, but expressed its willingness to represent any combination of these units found appropriate by the Board. Following a hearing, the Board found that all employees in Departments 42 and 31 together constituted "a functionally distinct, homogeneous departmental unit" appropriate for collective bargaining. Thereafter the union filed a motion to stay the election and for clarification of direction of election, alleging that, although there were some 92 tool-and-die

makers and machinists in Department 31, there were approximately 400 employees in that department of whom some 300 performed production duties comparable to those performed by the other production workers in the plant. The Board then proposed to amend its prior unit finding by excluding the employees in Department 31 from the tool room unit. On further consideration, the Board issued a supplemental decision, in which it found that the experimental factory (Department 31) was a production department and not part of the tool room department, and that the tool manufacturing department (Department 42), by itself, constituted a traditional tool room department. It ordered that its prior unit finding be amended, and directed that an election be held among "all employees in the tool manufacturing department (Department 42) * * * excluding all other employees * * *."

In accordance with this decision, an election was held among the employees in the unit found appropriate, and the majority voted for the union. The Board accordingly certified the union as the bargaining representative of these employees.

Respondent continued to challenge the appropriateness of the bargaining unit determined by the Board. It refused to bargain with the union, which promptly filed a charge with the Board, and a complaint issued. Thereafter, counsel entered into a stipulation concerning certain facts and jointly moved to transfer the proceedings to the Board, waiving their right to a hearing before a trial examiner and submitting the case directly to the Board. The Board found in accordance with its prior decision that the union is a labor organization entitled to represent all employees in the tool manufacturing department (Department 42) at respondent's Pomona plant, excluding all other employees; that the union had been certified as the representative of such employees, and that the above employees constitute a unit appropriate for the purpose of collective bargaining. The Board found that respondent's refusal

to bargain with the union violated Section 8(a) (5) and (1) of the Act.

The Board accordingly ordered the respondent to cease and desist from refusing to bargain with the union, and to bargain with the union on its request, and post appropriate notices. Respondent refused to comply with this order, again solely for the purpose of obtaining judicial review of the propriety of the bargaining unit.

The record discloses that the employees in the tooling section of Department 31 are engaged in the manufacture of tools, which is the identical task performed by employees in Department 42. These employees in Department 31 have the same skills as the employees in Department 42. The employees in both departments use the same kind of machines, work with the same kind of materials, design and fabricate identical tools, work the same hours, receive the same rate of pay and have the same fringe benefits, and employees within the same classification are interchanged within the two departments.

The sole contention of respondent on this review is that the Board acted "in an arbitrary, unreasonable and capricious manner, thereby abusing its discretionary powers under the Act, when it failed to include the tooling section of Department 31 in the bargaining unit, where the employees therein perform identical work and utilize the same skills as the employees in Department 42."

There is much in the record of the representation proceedings which supports respondent's contention. As previously stated, in the union's petition seeking certification it sought certification as the bargaining representative of the employees in the tool and die department, including tool inspectors, but excluding all other employees. Acting on the wholly erroneous belief that all of the employees in Department 31 (approximately 400) were engaged in the fabrication of tools, the Board directed that the election be held in the following voting group: "All employees in the tool manufacturing department (Department 42) and the experimental factory (Department 31), excluding all other employees and supervisors as defined in the Act." In its decision and direction of election the Board stated *inter alia:*

"The Employer also has a Department 31, called the experimental factory. Employees assigned to this department are engaged in what the Employer refers to as 'mandatory' tooling, or the manufacture of experimental tools for prototype or testing purposes. Department 31 employees use the same machine and employ the same skills as Department 42 employees, and are classified as tool and die makers A, boring mill horizontal machinists, grinders tooling, heat treaters steel, jig borer machinists, lathe machinists, milling machine machinists, shaper machinists, and grinders tool and cutter. The record does not reveal the supervisory structure or the administrative organization of Department 31.

"On the basis of the foregoing, we find that the Petitioner's primary unit request, for employees in Departments 42 and 27, is inappropriate on a departmental basis, as it includes inspectors who are not shown to be tool makers, are not assigned to the toolrooms, and are not engaged in tool manufacturing. Nor could a unit confined to the employees assigned to Department 42, who manufacture tools for production, be considered a functionally distinct group, as it would exclude the employees of Department 31, who perform the closely related, if not identical, function of manufacturing tools used for experimental purposes. The alleged craft unit requested by the Petitioner is also inappropriate as, apart from any other considerations, it does not include all employees in the plant with comparable skills. However, although tool manufacturing and the experimental factory are separate departments for administrative purposes, employees in both groups, as indicated above, are en-

gaged in the function of fabricating tools. In these circumstances, we find that all employees of Department 42, tool manufacturing, and Department 31, experimental factory, together constitute a functionally distinct and homogeneous departmental group who may, if the employees therein so desire, constitute a separate appropriate unit. The fact that there are employees with similar classifications in other departments, and that there are transfers of employees to and from the departments in the unit found appropriate, does not render the unit inappropriate, in view of the facts that no other departmental groups are engaged in the manufacture of tools, and that there is little interchange of employees between these and other departments in the plant.

"Accordingly, we shall direct that an election be held in the following voting group at the Employer's Pomona, California, missile plant. All employees in the tool manufacturing department (Department 42) and the experimental factory (Department 31), excluding all other employees and supervisors as defined in Act." (Footnotes omitted.)

The original decision and order of the Board was amended solely on the ground that the Board had overlooked the fact that out of the approximately 400 employees in Department 31, only 90 were tool and die makers, and machinists, and the remainder performed production duties comparable to those performed by other production workers in the plant. In petitioner's motion to stay election and for clarification of direction of election it is stated "that the unit as described in the Board's direction of election would contain many unskilled or semi-skilled workers not suitable for representation by a truly craft organization such as Petitioner, and that a proper unit to carry out the intention of the Board would be that of all of Department 42 (tool manufacturing) and that section (tooling section) in Department 31 which is occupied with the manufacture of 'mandatory tooling' used in the experimental factory.

"Petitioner's position is that the said 'tooling section' is a model unit similar to Department 42, which provides a similar function under a similar organization for the experimental factory that Department 42 does to the main factory itself."

In its supplemental decision and order amending direction of election, the Board stated:

"As indicated above, the Board, in its Decision and Direction of Election, found appropriate for severance purposes a unit of all employees in the tool manufacturing department (Department 42) and all employees in the experimental factory (Department 31), who, the Board found, constitute a functionally distinct and homogeneous departmental group of toolroom employees. * * *. However, we have found that Department 31 is not a toolroom, and the record fails to establish that there are any other toolrooms at this plant which have employees who should appropriately be included in a unit with the employees in Department 42. In these circumstances, we find the employees in Department 42 may constitute a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act, * * *."

The petitioner attempts to support the appropriateness of the bargaining unit determined by the Board largely on the grounds that the employees of Department 42 fabricate tools and dies for use by production employees in the manufacture of missiles, while the tools produced in the tooling section of Department 31 are those needed by the production employees in that department for the manufacture of experimental parts.

In view of the fact that the employees have the same skills, work with the same kind of machines, with the same kind of materials, and design and produce identi-

cal tools, it appears to us that the distinction sought to be made is completely illusory. It is further difficult for us to see how the Board could determine in its final decision that the employees in Department 42 constitute an appropriate unit in view of its earlier determination that "Nor could a unit confined to the employees assigned to Department 42, who manufacture tools for production, be considered a functionally distinct group, as it would exclude the employees of Department 31 who perform the closely related, if not identical, function of manufacturing tools used for experimental purposes." A unit composed of the employees of Department 42 and the employees of the tooling section of Department 31 does not become inappropriate simply because the Board later discovers that there are employees in Department 31 other than the employees in the tooling section of that department.

We do not have in this case the severance of skilled workers from a homogeneous unit of skilled workers because of geographical considerations, or because the severed group performs a different type of work than that performed by the remainder of the group, or because there is little, if any, interchange of employees between the two groups, or because of essential differences in the supervisory or administrative organization of the two groups. We find the cited decisions of the National Labor Relations Board and of the courts relied upon by petitioner to be inapposite.

In our view, the effect of the unit found by the Board to be appropriate is to fragmentize a homogeneous group of skilled workers whose skills and interests are the same, who work on the same machines with the same materials, producing the same identical tools, wherein there is an appreciable interchange of employees in the same classification, and where there is no appreciable physical segregation between skilled workers in the two departments, and where rates of pay and working conditions are the same. Under the facts and circumstances here involved, the result of the Board's decision is to permit a homogeneous unit to be divided into two groups each represented by a different and competing labor organization. Such a situation creates rather than avoids difficult problems for labor and management.

We are mindful that great latitude is given to the Board in determining the unit appropriate for the purpose of collective bargaining, Foreman & Clark, Inc. v. National Labor Relations Board, 9 Cir., 215 F.2d 396, certiorari denied 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697; National Labor Relations Board v. Moss Amber Mfg. Co., 9 Cir., 264 F.2d 107, and that the law is well settled that the Boards' determination of the appropriateness of a bargaining unit will not be upset by the court unless such determination is arbitrary and capricious. We must respectfully say, however, that on the entire record in this case, the determination of the Board that an appropriate unit composed of all employees in the tool manufacturing department (Department 42), excluding all other employees and supervisors, is arbitrary and capricious.

The petition for the enforcement of the Board's order is denied.