**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**B. H. HADLEY, INC., Respondent.**

**No. 18017.**

United States Court of Appeals Ninth Circuit.

Aug. 7, 1963.

Stuart Rothman, Gen. Counsel; Dominick L. Manoli, Associate Gen. Counsel; Marcel Mallet-Prevost, Asst. Gen. Counsel; Melvin J. Welles and Ira M. Lechner, Attys., N. L. R. B., Washington, D. C., for petitioner.

Gibson, Dunn & Crutcher, and William F. Spalding, Los Angeles, Cal., for respondent.

Before JERTBERG and DUNIWAY, Circuit Judges, and FOLEY, Senior District Judge.

FOLEY, Senior District Judge.

This case is before the Court upon petition of the National Labor Relations Board for enforcement of the Order against the respondent, issued on February 22, 1962, pursuant to § 10(e) of the National Labor Relations Act, as amended (61 Stat. 136, 73 Stat. 519, 29 U.S.C. § 151 et seq.). The NLRB had jurisdiction of this matter because the Respondent, a California corporation, engaged in the manufacture of aircraft and missile products in Pomona, California, and shipped products to points outside of California.

The Board found that the Respondent violated § 8(a) (5) and (1) of the Act by refusing to bargain with the Union, International Association of Machinists, AFL–CIO [hereinafter referred to as the Union], which was certified as the exclusive representative of all machinists which had been found by the Board to constitute a unit appropriate for the purposes of collective bargaining within the meaning of § 9(b) of the Act.

The Respondent, under date of July 16, 1962, caused to be served upon the Board a purported answer to the petition for enforcement of the Order of the NLRB. The answer set forth the following:

"(1) Respondent admits the jurisdiction of the Court, the proceeding before the National Labor Relations Board resulting in the order of which enforcement is sought, and the service upon this respondent of the findings of fact, conclusions of law and order of the said National Labor Relations Board in said proceeding.

"(2) Respondent denies that the findings of fact, conclusions of law and order of the said National Labor Relations Board are valid or that said order is entitled to enforcement by said Honorable Court."

In its brief Respondent states that the employer [Respondent] admittedly refused to recognize the Union as bargaining agent on the grounds "(1) that the unit certified was inappropriate, and (2) the election was not validly conducted." No other contentions seem to be made in support of Respondent's refusal to recognize the Union as the bargaining agent. It is Respondent's claim that the Board's continued adherence to the Union as the bargaining agent is arbitrary or capricious and this the Board denies. Therefore, as stated by Respondent, the question before the Court is whether, on the record before it, the Board's continued adherence to the certified unit is arbitrary or capricious.

The Board in its Decision and Direction of Election found that the machinists covered by the petition, "being a homogeneous craft group, may constitute an appropriate craft unit." On this subject the Decision and Direction of Election recites:

"As indicated above, the Employer [Respondent] contends that the unit of machinists sought is inappropriate because its operations are integrated. We find no merit in this contention. The integrated nature of the Employer's operations does not preclude establishment of a craft unit. Although the Employer does not maintain an apprenticeship program, it requires extensive experience as a prerequisite to hiring of machinists. These machinists are craftsmen who regularly exer-

cise their craft skills and comprise a traditional craft grouping.

"The right of separate representation for members of a craft is not to be denied merely because the craft employees work in close association with other employees, or because all employees enjoy similar working conditions, or because the craftsmen use their skills directly on parts of the final product.

"Accordingly, we find that the machinists at the Employer's plant, being a homogeneous craft group, may constitute an appropriate craft unit."

In considering the question before us, we must determine from the record whether the findings of the Board as to the appropriateness of the certified unit are supported by substantial evidence and, in making such determination, we will follow the views of Judge Lemmon in Foreman & Clark, Inc. v. National Labor Relations Bd., 9 Cir., 215 F.2d 396, 398.

We have read the record and we believe the summary of the evidence stated in Petitioner's brief to be substantially correct. The summary is as follows:

"On October 17, 1960, the Union filed a petition seeking certification as the bargaining representative of 'all machinists, their apprentices and helpers'. An investigatory hearing was held on November 7, 1960. The Company was represented at the hearing by its vice-president as counsel.

"The evidence introduced [in the representative proceeding] consisted solely of the testimony of Frank R. Osborne, the Company's vice-president and general manager, and Personnel Manager John Thomas Cooper. Their testimony disclosed that the Company's plant consist of 4 closely-knit buildings: a main building, an assembly and testing building, a hydraulic and pneumatic testing building, and tool engineering and quality control departments located in a fourth building referred to as the 'country club building'. In the shop area, located in the main building, employees operate standard machine tools such as turret lathes, engine lathes, milling machines, burring machines, and boring equipment. The classifications of employees who operate machines in the shop area are turret lathe operators A and B, engine lathe operators A and B, drill press operators A and B, toolroom machinists A and B, burrers, precision grinders, milling machine operators A and B, Hardhinge machine operators, tool and fixture makers, and tool and cutter grinders.

"Among the employees in the assembly and testing building are two development technicians who operate 4 to 6 machines and receive substantially the same rate of pay as the machinists in the main building. Vice-President Osborne testified that the development technicians 'are machinists or men who operate or perform the function of machinists'. Their work is a combination of toolroom precision machine work and precision assembly work. The same work 'is frequently performed by a combination of toolroom machinists and one of the higher skilled assemblers in the assembly department'. Of the ten employees in the plant maintenance department, one is a maintenance mechanic under machine shop supervision who operates 'all kinds of machine tools' in making parts or repairing machines.

"A general foreman supervises both the machine shop and the toolroom, while the employees in the other departments are under separate supervision. The two development technicians who perform machinist work in the testing laboratory are supervised by the Chief Testing Engineer who is in 'constant communication' with the general foreman of the machine shop.

"Although there is no apprenticeship program for machinists, Personnel Manager Cooper testified that the Company attempts to hire 'the most skilled man available'. Job hiring and the Company, as a general rule, desires from three to five years' experience as a prerequisite to hiring of toolroom machinists, precision grinders, turret lathe operators, engine lathe operators, milling machine operators, and tool and cutter grinders. As to tool and fixture makers and Hardhinge machine operators, Cooper testified that he desired applicants with as much experience as possible and preferred '25 years or more years, if I could get them'. In hiring new employees the Company desires drill press operators with two years' experience and burrers with experience of one to two years. The normal job progression among machinists is initially from subclassification 'B' to 'A'. The progression is then from the operation of various machines requiring less skill to others requiring greater proficiency until the employee reaches the highest job classification of toolroom machinist.

"Both Cooper and Osborne testified that they believed there had been one or more transfers between the machine shop and the other departments, but they could not recall a specific instance of such a transfer without consulting the Company's records. There was no evidence introduced of any interchange of employees doing machinist's work with other job classifications. There is no history of collective bargaining covering any of the company's employees."

We are satisfied that there was sub stantial evidence to support the Board' finding and conclusion that the Union here constituted an appropriate craf unit.

From our examination of the record we hold that the Board's determination of the unit was neither arbitrary nor capricious.

In N. L. R. B. v. Moss Amber Mfg. Co., 9 Cir., 264 F.2d 107, this Court held:

"[2] Under Section 9(b) of the Act, the Board was delegated the authority to determine the appropriate bargaining unit. Under Section 9 (c) (5) of the Act the Board must decide in each case whether the unit appropriate for collective bargaining purposes shall be the employer unit, craft unit, plant unit, or subdivision thereof. The law is well settled that the Board's determination of the appropriateness of a bargaining unit will not be upset by the courts unless such determination is arbitrary or capricious. [Citing cases]"

On April 13, 1961, Respondent filed with the Board a motion for reconsideration and rehearing. The motion was entitled, "Motion Of Employer For Amendment Of Direction Of Election Extending Time In Which Election May Be Held; And Motion For Reconsideration Or Rehearing." The motion recites:

"On March 29, 1961, the Board issued its decision herein directing an election within thirty days in the following unit, which is found to be an 'appropriate craft unit':

'All machinists, including toolroom machinists A and B, tool and fixture makers, tool and cutter grinders, hone operators, precision production grinders, Hardhinge machine operators, turret lathe operators A and B, engine lathe operators A and B, milling machine operators A and B, maintenance machine mechanics, drill press operators A and B, burrers, and development technicians who operate machines, but excluding all other production and maintenance employees, office clericals, guards, watchmen, professional employees and supervisors as defined in the Act.'

"The Employer respectfully petitions the Board to

"(1) Amend its direction of election to delay the election (now scheduled for April 27) until the Board has had time to consider the Employer's motion for reconsideration or rehearing, which such motion and all of its supporting papers are filed herewith; and

"(2) To reconsider its decision and the Employer's contention that the unit found appropriate by the Board is in fact an inappropriate unit, not only inappropriate in itself, but which leaves residual groups which cannot be combined into any appropriate unit themselves; or

"(3) To reopen the record and hold further hearing, inasmuch as the record herein does not contain many relevant facts bearing upon the questions involved and is inadequate for the determination of an appropriate unit."

In support of its motion, among other things, Respondent argued:

"The Employer respectfully submits to the Board that the facts concerning the question of unit are as follows, some of which appear of record, many of which are not on the record at all, and some of which are incorrectly stated on the record.

"The plant is engaged in the design, manufacture and testing of fluid control devices, particularly for use in missiles. The parts for these units are fabricated in the Employer's machine shop on a variety of standard machine tools. The machines are operated by an operator whose classification bears the title of the particular machine. Each operator in the machine shop operates one type of machine tool. He is a specialized machine operator, not a machinist. Also, he is a production worker. He is turning out large numbers of component parts, all of the same type."

Respondent also contended that there was no job progression program.

The Board's Trial Examiner, Martin S. Bennett, in the "Intermediate Report and Recommended Order" concerning points raised in Respondent's motion of April 13, 1961, among other things, stated:

"C. *Respondent's contentions*

"As noted, Respondent concedes that it has refused to recognize and bargain with the Union and presses a number of reasons why the certification of the Union should not be recognized. As an initial premise herein, the Board has recently reaffirmed its long standing doctrine, stating: 'It is the policy of the Board not to allow a party to relitigate in a complaint proceeding such as this one the legal effect of matters which the party has already litigated and the Board has decided in a prior representation proceeding.' Producers, Inc., 133 NLRB No. 69. See O.K. Van and Storage, Inc., 127 NLRB 1537.

"(1) Respondent still presses herein its position previously submitted to and elaborated before the Board wherein it challenges the appropriateness of the unit established by the latter. I sustained herein the objection by the General Counsel to the introduction of any evidence on this topic. This evidence, it may be noted, did not consist of newly arisen evidence of any drastic change in Respondent's organizational structure, but was evidence of classifications, skills, and progressions of employees. Indeed, Respondent, with commendable candor, conceded herein that this contention with respect to appropriate unit had been raised before the Board in its motion for reconsideration of the original Board's decision."

In National Labor Rel. Bd. v. Worcester Woolen Mills Corp., 1 Cir., 170 F.2d

286

13, 16, the Court, dealing with contentions urged here, stated:

"[2, 3] Certification or unit proceedings under § 9(c) of the Act are not made subject to direct review by the Courts of Appeal under § 10(f) of the Act (American Federation of Labor v. National Labor Relations Board, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347), but the record in such proceedings is part of the record in unfair labor practice proceedings based on a refusal to bargain collectively with a labor organization which has been certified, with the result that 'The unit proceeding and this complaint on unfair labor practices are really one.' Pittsburgh Plate Glass Co. v. National Labor Relations Board, 313 U.S. 146, 158, 61 S.Ct. 908, 915, 85 L.Ed. 1251. But an issue covered and decided in unit proceedings cannot as of right be relitigated in a subsequent unfair labor practice proceeding. If such an issue is to be relitigated in an unfair labor practice proceeding once it has been canvassed in a certification proceeding it is up to the party desiring to do so to indicate in some affirmative way that the evidence offered is more than cumulative. Otherwise a single trial of the issue of [is] enough, and it is within the Board's discretionary power to refuse to reconsider the issue. Id., 313 U.S. at pages 161 and 162, 61 S.Ct. at pages 916, 917, 85 L.Ed. 1251.

"[4] Therefore the evidence on the issue of the validity of the election proffered by the Respondent in the instant proceeding is not before us. Its evidence on that issue offered and considered by the Board in the preceding certification proceeding, however, is before us, and that evidence amply substantiates the Board's conclusion that the election was valid and accurately reflected the wishes of the Respondent's production employees at the time."

We also find here that the evidence amply substantiates the Board's conclusion that the election was valid and accurately reflected the wishes of the Respondent's production employees at the time.

In view of the principles laid down in the cases cited above, we need not consider other points raised by Respondent.

Reviewing the record as a whole, we are unable to say as a matter of law that the Order of the National Labor Relations Board herein is not supported by substantial evidence.

The Order is affirmed and will be enforced.